U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

JUN 1 5 2006

ROBERT H. SHEMWELL, CLERK
BY_____
         DEPUTY

*filed per CmH*

*Judgment*

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **PREIS KRAFT & ROY** | * | **CIVIL ACTION NO. 05-953** |
| **VERSUS** | * | **JUDGE MELANÇON** |
| **DALLAS FIRE INSURANCE CO.** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

Pending before the undersigned for report and recommendation is the Motion to Dismiss for Lack of Personal Jurisdiction (rec. doc. 7) and the Motion to Transfer Venue (rec. doc. 52) filed by defendant, Dallas Fire Insurance Company ("Dallas Fire"), on June 9, 2005, and February 6, 2006, respectively. The motion to dismiss is opposed by plaintiff, Preis Kraft & Roy ("PKR"). The parties were informed that in the event that the undersigned were to find that this court lacked personal jurisdiction over Dallas Fire, that the undersigned would recommend that this case be transferred to the Southern District of Texas rather than be dismissed; neither party objected. (Tr. 158).

## PROCEDURAL BACKGROUND

On December 8, 2005, the undersigned issued a Report and Recommendation recommending that the motion to dismiss be granted. (rec. doc. 40). PKR filed objections to the Report and Recommendation on December 16,

2005. (rec. doc. 41). By Order dated January 3, 2006, Judge Tucker L. Melançon directed that this matter be returned for the undersigned to conduct a hearing, or require such additional briefing as deemed necessary and advisable. (rec. doc. 42). The Order further directed the undersigned to consider whether this Court has specific jurisdiction in this suit on open account in light of the Fifth Circuit's ruling in *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545-46 (5th Cir. 1985). Judge Melançon further ordered that in the event that the undersigned concluded that this Court lacked specific jurisdiction, I was to consider the propriety of transferring the case to the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1404.

In accordance with Judge Melançon's Order, the undersigned held an evidentiary hearing. Prior to the hearing, both parties submitted pre-hearing briefs. (rec. docs. 47, 49). After the hearing, counsel requested that post-hearing briefs be accepted after the transcript was filed. The court granted that request.

At the hearing, Dallas Fire called as witnesses Ronald Edwin Tigner (Tigner), an attorney with PKR's office in Houston, Texas; Eugene Joseph Eisenmann, Jr., Dallas Fire's president during the relevant time period; Rustin Polk, Dallas Fire's general counsel, and Paul L. Dickerson, Dallas Fire's litigation manager. In addition to questioning these witnesses, PKR called Larry Lane Roy,

2

an attorney with PKR who is also one of the law firm's owners.

Subsequent to the hearing, the parties in fact filed post-hearing briefs. (rec. docs. 61, 62). Thus, this matter is now ripe for determination.

## LAW AND ANALYSIS

### Motion to Dismiss

The undersigned has already determined that the Court lacks general jurisdiction in this case. (rec. doc. 40). The undersigned sees no reason to reconsider that ruling. Thus, the sole issue to be decided is whether this Court has specific jurisdiction over this matter.

In a diversity suit, two preconditions must generally be satisfied to allow the court to exercise personal jurisdiction over nonresident defendants served out of state: (1) the nonresidents must be amenable to service of process under the forum state's long-arm statute (an issue which is governed by the law of the forum state)[1] and (2) if the state jurisdictional statute has been complied with, the assertion of jurisdiction over the nonresidents must be consistent with the due process clause of the Fourteenth Amendment (an issue which is governed by federal law). *D.J.*

---

[1]Louisiana's long-arm statute was specifically amended to permit service of process to the full extent permitted by the due process clause of the United States. *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990). Thus, the statutory and constitutional inquiries merge. *Id.*

3

*Investments*, 754 F.2d at 544 (citing *DeMelo v. Toche Marine, Inc.,* 711 F.2d 1260, 1265 (5th Cir.1983)). To satisfy the latter condition that the exercise of jurisdiction must be consistent with the due process clause, the Fifth Circuit has outlined two requirements: (a) the nonresidents must have some minimum contacts with the forum resulting from an affirmative act or acts on their part; (b) it must not be unfair or unreasonable to require the nonresidents to defend the suit in the forum state. *Id.* at 544-545 (citing *Growden v. Ed Bowlin and Associates, Inc.,* 733 F.2d 1149, 1150 (5th Cir.1984)). The "minimum contacts" prong, for specific personal jurisdiction purposes, is satisfied by actions, or even just a single act, by which the non-resident defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." *Id.* at 545 n. 1 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)). The defendant's conduct and connection with the forum state must be such that the defendant "should reasonably anticipate being haled into court in the forum state." *Id.* A nonresident purposefully avails itself of the benefits and protection of the forum's laws both by engaging in activity in the state and by engaging in activity outside the state that has "reasonably foreseeable consequences in the state." *Id*, n.5. (quoting *Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1268 (5th Cir. 1981)).

4

"Considerations such as the quality, nature, and extent of the activity in the forum, the foreseeability of consequences within the forum from activities outside it, and the relationship between the cause of action and the contacts, relate to whether it can be said that the defendant's actions constitute 'purposeful availment.[']" *Id.* (quoting *Prejean,* 652 F.2d at 1268). Unilateral activity by the party who claims some relationship with the nonresident, however, cannot satisfy the requirement of contact with the forum state. *Id.*

Maintenance of the suit must not offend " 'traditional notions of fair play and substantial justice.' " *Id.* (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). The "fairness prong" requires the court to consider, "among other things, the interest of the state in providing a forum for the suit, the relative conveniences and inconveniences to the parties, and the basic equities." *Id.* (quoting *Southwest Offset, Inc. v. Hudco Publishing Co., Inc.,* 622 F.2d 149, 152 (5th Cir. 1980). "[T]he fairness prong cannot compensate for or overcome the requirement of some minimum contacts with the forum state." *Id.* (quoting *Growden,* 733 F.2d at 1150-51 (footnote omitted)).

When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the party seeking to invoke the court's jurisdiction has the burden of establishing jurisdiction over the nonresident. *Id.* at 545; *Hargrave v.*

5

*Fibreboard Corporation*, 710 F.2d 1154, 1159 (5th Cir. 1983). If the question whether jurisdiction lies in federal court is to be decided on the basis of facts contained in the parties' affidavits, the party who bears the burden need only present a *prima facie* case for personal jurisdiction. *Id.* at 545-546. However, if the trial court holds an evidentiary hearing, as was the case here, the burden becomes that of proof by a preponderance of the evidence. *Felch v. Transportes Lar-Mex SA De CV*, 92 F.3d 320, 326 (5th Cir. 1996).

PKR asserts that the Court has specific jurisdiction over this matter because: (1) Dallas Fire asserted legal malpractice claims against plaintiff in its answer and (2) tort and breach of contract (failure to pay on an open account) damages were caused in Louisiana based on PKR's claims for fraud and misrepresentation, detrimental reliance, interference with contract, and defamation. Each of these arguments will be addressed in turn.

## Legal Malpractice

PKR first asserts that Dallas Fire "negated its jurisdictional protests" by asserting legal malpractice claims against plaintiff in its answer. (rec. doc. 61, p. 1). In the Original Answer to Plaintiff's First Amended and Supplemental Complaint, Dallas Fire pled that it had "advised Plaintiff that Defendant *was reviewing* Mr. Tigner's conduct for malpractice." (emphasis added). (rec. doc. 60,

¶ 2(ar)). At this point, however, Dallas Fire has not asserted a claim for malpractice against PKR in this litigation. Thus, this contention is premature (at best) and cannot form the basis for jurisdiction.

**Suit on Open Account**

PKR argues that there were substantial contacts with Louisiana by Dallas Fire in this suit, including payment of invoices in Louisiana, forwarding of IRS Forms 1099 for expert witnesses to Louisiana, and written communications between PKR's Lafayette, Louisiana office and Dallas Fire directly relating to the financial matters in dispute. (rec. doc. 61, p. 5). However, as the undersigned noted in the prior Report and Recommendation, these acts of Dallas Fire showing contact with the state of Louisiana are essentially limited to payments sent to Louisiana and communication with PKR about PKR's bills. (rec. doc. 40, p. 11). Those contacts can in no way be characterized as "continuous and systematic contacts" sufficient to satisfy the due process requirements of *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) for purposes of general jurisdiction.

The undersigned further finds that these contacts do not satisfy the requirements for specific jurisdiction. There was no evidence that Dallas Fire sought legal services from PKR in Louisiana. (Tr. 25, 28). The only contact

7

referenced at the hearing was one conversation lasting less than one hour between Tigner (a PKR employee) and a lawyer from PKR's Lafayette office regarding a coverage issue. This contact was initiated by Tigner, not Dallas Fire. (Tr. 30-34). PKR has failed to show by a preponderance of the evidence that Dallas Fire "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws," for specific jurisdiction purposes. *D.J. Investments*, 754 F.2d at 545. Thus, this argument lacks merit.

## Tort Claims

PKR asserts that because tort damages were caused in Louisiana, jurisdiction is proper in this Court. (rec. doc. 61, p. 3). These alleged damages consist of legal fees and expenses exceeding $401,000, which PKR incurred while representing Dallas Fire. (rec. doc. 61, p. 4). PKR further contends that the evidence is sufficient to warrant this court's exercise of jurisdiction under each of its causes of action, including fraud/misrepresentation, detrimental reliance, interference with contract, and defamation. (rec. doc. 5). Because the first three tort claims arise out of actions occurring prior to the lawsuit, these will be addressed together.

8

<u>Fraud/Misrepresentation, Detrimental Reliance, and Interference with Contract</u>

The first tort claim alleged by PKR is for fraud and misrepresentation. (rec. doc. 61, p. 5). Louisiana jurisprudence views intentional misrepresentation as generally synonymous with delictual fraud or fraudulent misrepresentation. *Aucoin v. Kennedy*, 355 F.Supp.2d 830, 844 (E.D. La. 2004). Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. LA. CIV. CODE ANN. art. 1953. Fraud may also result from silence or inaction. *Id.*

To prove fraud, one must show: (1) an intent to defraud, and (2) actual or potential loss or damages. *St. Paul Mercury Insurance Co. v. Williamson*, 224 F.3d 425, 438 (5th Cir. 2000). Negligent misrepresentation occurs when (1) a person has a legal duty to supply correct information; (2) he breaches that duty; and (3) his breach causes damages to the plaintiff. *Society of Roman Catholic Church of Diocese of Lafayette v. Interstate Fire & Casualty Co.*, 126 F.3d 727, 742 (5th Cir. 1997).

PKR argues that Dallas Fire "intentionally misled" PKR by "intentionally" failing to inform the law firm that Dallas Fire had "unilaterally" changed the terms of its agreement by "secretly imposing conditions" on future payments based on

9

Dallas Fire's subjective satisfaction with the results. (rec. doc. 61, p. 7). Dallas Fire, on the other hand, argues that it paid PKR until the law firm exceeded its legal budget. (rec. doc. 62, p. 6).

PKR also asserts a tort claim for detrimental reliance. Under Louisiana law, the elements of a cause of action for detrimental reliance are: (1) a promise made (2) by one who knows or has reason to know (3) that the promise will induce the other party to rely, (4) to his detriment, (5) provided the reliance is reasonable. *Condrey v. SunTrust Bank of Georgia*, 429 F.3d 556, 565 (5th Cir. 2005). PKR argues that because of Dallas Fire's "unilateral and secret decision" to stop paying for services rendered, PKR changed its position to its detriment by incurring substantial attorney's fees and expenses because it relied on Dallas Fire's past record of making payments. (rec. doc. 61, p. 8). Dallas Fire contends that PKR's detrimental reliance claim cannot establish jurisdiction because PKR did not show that Dallas Fire aimed its representations at Louisiana, or that Louisiana is the focal point of Dallas Fire's alleged conduct. (rec. doc. 62, p. 8).

The next claim alleged by PKR is for tortious interference with contract. The elements of this cause of action are: (1) the existence of a contract or a legally protected interested between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or

10

causation of the corporation to breach the contract or his intentional rendition of

its performance impossible or more burdensome; (4) absence of justification on

the part of the officer, and (5) causation of damages to the plaintiff by the breach

of the contract or difficulty of the performance brought about by the officer. *9 to 5*

*Fashions, Inc. v. Spurney*, 88-0902, 88-0904 (La. 1/30/89); 538 So.2d 228, 234.

PKR asserts that Dallas Fire's president, Eugene Eisenmann, unilaterally decided

to allow PKR to continue representing Dallas Fire with the intent to withhold

payment, which caused Dallas Fire to breach its contract with PKR through failing

to pay for services rendered. (rec. doc. 61, p. 9). Dallas Fire argues that a party

cannot interfere with its own contract, and that PKR cannot establish that Dallas

Fire's conduct was aimed at Louisiana or interfered with a Louisiana agreement.

(rec. doc. 61, p. 8).

As PKR correctly points out, the issue is not whether any of the causes of

action it alleges state a valid claim in tort, but rather, whether a tribunal sitting in

Louisiana can exercise personal jurisdiction over the nonresident Dallas Fire for

injury to PKR resulting from the alleged torts. (rec. doc. 61, p. 1). *Simon v.*

*United States*, 644 F.2d 490, 497-98 (5th Cir. 1981). Thus, the narrow issue to be

decided is *not* whether PKR can recover on any of these theories, but rather

whether the causes of action as alleged  may be said to have been committed

through an act or omission in Louisiana. *Id.* at 498.

All of these tort claims for fraud/misrepresentation, detrimental reliance,
and tortious interference of contract relate to Dallas Fire's failure to pay PKR for
legal services rendered in Texas. As a result of this failure, PKR asserts that it
sustained "substantial damages" consisting of over $401,000 in unpaid legal fees
and expenses. (rec. doc. 61, pp. 4, 10). In support of its assertion that jurisdiction
is proper in Louisiana because tort damages were "caused" in Louisiana, PKR
cites *Guidry v. United States Tobacco Company*, 188 F.3d 619 (5th Cir. 1999),
where the court held as follows:

> When a nonresident defendant commits a tort within the state, or an
> act outside the state that causes tortious injury within the state, that
> tortious conduct amounts to sufficient minimum contacts with the
> state by the defendant to constitutionally permit courts within that
> state, including federal courts, to exercise personal adjudicative
> jurisdiction over the tortfeasor and the causes of actions arising from
> its offenses and quasi offenses. (citations omitted). Even an act done
> outside the state that has consequences or effects within the state will
> suffice as a basis for jurisdiction in a suit arising from those
> consequences *if the effects are seriously harmful and were intended
> or highly likely to follow from the nonresident defendant's conduct.*    .

(emphasis added). *Id.* at 628.

In *Guidry*, the plaintiff, Charles Guidry, alleged that as a result of
defendants' false representations as to the addictive and cancer-causing effects of

12

their tobacco products, he became addicted and contracted cancer from his use of the products. In finding that the federal district court had sufficient minimum contacts, the Fifth Circuit noted that defendants' alleged intentional and negligent actions were knowingly initiated and aimed at tobacco users in Louisiana; each defendant made false misrepresentations of facts that it knew would have a *"potentially devastating physical harmful impact"* on Louisiana residents, and each defendant knew that the brunt of that injury would be felt by the plaintiffs and other citizens in the state in which they lived. (emphasis added) *Id.* at 630.

*Guidry* is distinguishable from this case in that the harm caused in that case was physical, rather than solely monetary. In fact, the Fifth Circuit specifically observed that the tobacco trade association defendants were not charged "with mere untargeted negligence endangering only *economic* or reputational interests," but rather with actions that would potentially have "devastating physically harmful impact" on the plaintiffs. (emphasis added) *Id.* at 630.

In determining where the injury occurred for jurisdictional purposes, actual injury must be distinguished from its resultant consequences, such as pain and suffering, economic effects or other collateral consequences that often stem from the actual injury. In *Gertler v. Gondola Ski Shop, Inc.*, 384 So. 2d 856 (La. App. 4 Cir., 1980), the court rejected the argument advanced by PKR here, albeit in a

13

different context. Specifically, the court rejected as "without merit" plaintiffs'

argument that medical treatment and pain suffered in Louisiana were sufficient by

themselves to bring the case within the "causing injury or damage" clause of the

Louisiana Long Arm Statute. The court recognized that the words "injury or

damage" refered to personal injury or property damage. *Id.* at 858, n.3.

To the extent that it might be argued that this holding did not survive the

1987 amendment to the Louisiana Long Arm Statute, (La. R.S. 13:3201B) which

extended the reach of the long arm statute to the full extent permitted by due

process, that argument is belied by the decision in *Cohen v. Cohen*, 635 So.2d

1293 , 94-0381, (La. App. 4 Cir. 4/14/94), in which the court held that the due

process clause did not allow a Louisiana resident to sue a Vermont resident in a

Louisiana court for personal injuries sustained in an automobile accident in

Vermont.[2] While the court's decision in *Gertler* may been seen as merely a

Louisiana court construing a Louisiana statute, the court's decision in *Cohen* is

clearly to the effect that sustaining damage in Louisiana from an injury suffered

outside of Louisiana is insufficient, under due process, to confer personal

jurisdiction on a Louisiana court. Although the undersigned has been unable to

---

[2]While it is not clear from the decision, apparently the plaintiff was still suffering general damages and perhaps incurring medical expenses in Louisiana.

14

find a Fifth Circuit case construing the Louisiana Long Arm Statute or the due process clause so holding, I fully agree with the court's stated rationale and holding in *Cohen.*

Clearly, the effects of torts committed outside the forum state that causes death or serious physical harm may serve as minimum contacts for the purpose of personal jurisdiction. *Guidry*, 188 F.3d at 629. Intentional and tortious actions (such as defamation) expressly aimed at a state may also provide sufficient minimum contacts to confer jurisdiction. *Id.*

In this case, however, the alleged "injury" is the failure to collect legal fees on an unpaid open account. This "injury" is nothing more than the economic consequences of the failure to collect outstanding bills. There has been no showing that any act by Dallas Fire led to actual "injuries or damages" in Louisiana, as those terms are used in the context of showing sufficient minimum contacts for the court's exercise of personal jurisdiction over an out-of-state party.

To reiterate, in order to establish specific jurisdiction, the plaintiff must show the nonresident defendant's purposeful availment of the benefits and protections of, and minimum contacts with, the forum state. *D.J. Investments*, 754 F.2d at 545; *Panda Brandywine Corporation v. Potomac Electric Power Company*, 253 F.3d 865, 868 (5th Cir. 2001). Here, there are no facts establishing

that Dallas Fire "purposefully availed" itself of the privilege of conducting activities in Louisiana. To the extent that PKR has sustained "damages", those damages were caused by Dallas Fire's refusal to pay PKR's legal bills. That decision was clearly made in Texas.

The record reflects that Dallas Fire retained Tigner (a Texas lawyer) as its attorney to handle a lawsuit in Texas while Tigner was practicing with a Texas law firm. (Tr. 9-10). After Tigner was retained by Dallas Fire, he joined PKR and took the file with him. (Tr. 10). Tigner continued to practice in Houston. Eventually, Dallas Fire retained Tigner to handle other matters out of PKR's Houston office, all of which involved lawsuits in Texas. (Tr. 28; rec. doc. 22, Affidavit of Ronald E. Tigner). Tigner testified that he had once been approached by AMS Staff Leasing, which shared office space with Dallas Fire,[3] to handle a landlord/tenant dispute in New Orleans, Louisiana, but there is no evidence that this occurred. (Tr. 13). Other than this isolated incident, with a company that merely shared office space with Dallas Fire, there is no evidence that Dallas Fire ever even talked to PKR in Louisiana before this dispute, much less retained, or sought to retain, PKR to represent it in Louisiana.

---

[3]Tigner testified that he "never really knew what the relationship was" between AMS and Dallas Fire. (Tr. 13).

PKR argues that because tort damages occurred in Louisiana, jurisdiction is proper here. (rec. doc. 61, p. 3). However, the foreseeable effects of a tort "are to be assessed as *part* of the analysis of the defendant's relevant contacts with the forum." (emphasis added). *Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir. 1997), *cert. denied*, 522 U.S. 1048, 118 S.Ct. 691, 139 L.Ed.2d 637 (1998) (quoting *Wallace v. Herron*, 778 F.2d 391, 395 (7th Cir. 1985)). PKR's allegations only relate to the foreseeability of causing injury in Louisiana, which is not in and of itself a "sufficient benchmark" for specific jurisdiction. *Panda Brandywine*, 253 F.3d at 869; *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999). The foreseeability that is critical to due process analysis is whether Dallas Fire's conduct and connection with Louisiana is such that it should reasonably anticipate being haled into court here. *Id*.

Under this analysis, PKR's allegations are insufficient. There are no facts suggesting that Dallas Fire's conduct was such that it should have anticipated being haled into court in Louisiana. The mere allegation that Dallas Fire allegedly committed torts which in turn allegedly caused damage to PKR in Louisiana does not establish that Dallas Fire met the requirements for minimum contacts. As the court observed in *Panda Brandywine*:

If we were to accept Appellants' arguments, a nonresident defendant
would be subject to jurisdiction in Texas for an intentional tort simply
because the plaintiff's complaint alleged injury in Texas to Texas
residents regardless of the defendant's contacts, and would have to
appear in Texas to defend the suit "no matter how groundless or
frivolous the suit may be." *Wallace,* 778 F.2d at 395. Such result
would completely vitiate the constitutional requirement of minimum
contacts and purposeful availment. We refuse to ignore the limits of
specific jurisdiction to allow Appellants to sue Appellee in the district
court based on Appellants' self-serving allegations when the
"potential" injury claimed by Appellants resulted from interference
with financing agreements that have nothing to do with Texas except
for the mere fortuity that Appellants reside there.

*Id.* at 870.

As in *Panda Brandywine,* the undersigned finds that PKR has not shown by

a preponderance of the evidence that Dallas Fire purposefully availed itself of the

privilege of conducting activities within Louisiana. The record shows that Dallas

Fire retained PKR's Houston office to perform legal work on lawsuits within the

state of Texas. It is clear from the evidence that Dallas Fire's contact with

Louisiana rests on nothing more than the mere fortuity that PKR's main office is

located in Louisiana. The purposeful availment of the privilege of conducting `

activities within the forum state required by the due process clause cannot be

inferred from such a mere fortuity. *Patterson v. Dietze, Inc.,* 764 F.2d 1145, 1147

(5th Cir. 1985). Accordingly, the undersigned finds that PKR cannot establish that

specific jurisdiction exists based on its claims for fraud/misrepresentation,

detrimental reliance, and interference with contract.[4]

## Defamation

Under Louisiana law, four elements are necessary to establish a cause of

action for defamation : (1) a false and defamatory statement concerning another;

(2) an unprivileged publication to a third party; (3) fault (negligence or greater) on

the part of the publisher; and (4) resulting injury. *Costello v. Hardy*, 2003-1146

(La. 1/21/04); 864 So.2d 129, 139.

PKR asserts that Dallas Fire defamed PKR when it filed into the record in

this suit Rustin Polk's affidavit, in which Mr. Polk accused PKR of illegally using

Louisiana attorneys to practice law in Texas, and implied that the firm was

engaged in "criminal activity." (rec. doc. 61, p. 9 (citing rec. doc. 27, ¶ 12)). At

the evidentiary hearing, Mr. Polk testified that he had "made an assumption,

perhaps correctly, perhaps incorrectly," that PKR was using attorneys that were

not licensed in Texas to handle cases in that state. (Tr. 92). PKR asserts that by

making this statement, Mr. Polk waived any qualified privilege that he might have

had protecting parties from defamation for statements made during judicial

---

[4]While PKR asserts various causes of action in tort so as to make the arguments it
advances here, in reality, this is a suit on an open account.

19

proceedings because it was not made in good faith.[5]

However, Mr. Polk's affidavit was prepared after the lawsuit was filed.

Minimum contacts must exist either at the time the cause of action arose, the time

the suit is filed, or within a reasonable period of time immediately prior to the

filing of the lawsuit. 28 *Federal Procedure, Lawyers Edition* § 65:10 (2006);

*Pecaroro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003).[6]  Thus,

these allegedly defamatory statements cannot serve as a basis for jurisdiction in

this case.

For the above reasons, the undersigned finds that PKR has failed to prove

by a preponderance of the evidence that Dallas Fire has sufficient minimum

contacts with Louisiana so as to allow this court to exercise personal jurisdiction

over Dallas Fire.

Title 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and

witnesses, in the interest of justice, a district court may transfer any civil action to

---

[5]Louisiana law recognizes a qualified privilege that provides parties to pending litigation the protection from being sued for defamatory statements made during judicial proceedings. *Lemke v. Keiser & Auzenne, L.L.C.*, 05-893 (La. App. 3 Cir. 2/1/06), 922 So.2d 690, 692. However, any such statement made by them in judicial proceedings must be material and must be made without malice and with probable cause. *Id.*

[6]While the Fifth Circuit has not specifically cited this rule, district courts from within this circuit have. *FG Hemisphere Associates LLC v. The République du Congo*, 2006 WL 870486 (S.D.Texas April 5, 2006); *Canyoncreek Communications Corp. v. Communication Cable Co.*, 2002 U.S. Dist. LEXIS 4168 (N.D. Texas March 14, 2002).

any other district or division where it might have been brought."

Decisions to effect a § 1404 transfer are committed to the sound discretion of the transferring judge. *Jarvis Christian College v. Exxon Corporation*, 845 F.2d 523, 528 (5th Cir. 1988). Important considerations in transferring a case are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Koehring Company v. Hyde Construction Company*, 324 F.2d 295, 296 (5th Cir. 1964).

Dallas Fire asserts that venue is proper in the Southern District of Texas because the operative facts in the instant dispute all arose in that district. (rec. doc. 52, ¶ 16). The record reflects that Tigner, who is one of the principal witnesses in this case, as well PKR's Texas office, are located in Houston, which is within the Southern District of Texas. Typically, the convenience of the witnesses and parties is the most important factor in determining whether a case should be transferred pursuant to § 1404(a). *Becnel v. Smile Community Action Agency, Inc.*, 207 F.Supp.2d 520, 522 (M.D.La. 2001). Further, PKR does not dispute that venue would be proper in the Southern District of Texas. It makes no

sense to dismiss this case here, only to have it re-filed in the Southern District of Texas. Judicial economy and savings in cost to the litigants favors transfer.

Accordingly, although the undersigned finds that this court is without personal jurisdiction over Dallas Fire, the undersigned recommends that the motion to Dismiss be **DENIED**, that the motion to transfer be **GRANTED**, and that this matter be transferred to the United States District Court for the Southern District of Texas.

**CONCLUSION**

Based on the foregoing, it is the recommendation of the undersigned that Dallas Fire's motion to dismiss be **DENIED**. The undersigned further recommends that the motion to transfer be **GRANTED**, and that this case be transferred to the United States District Court for the Southern District of Texas.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING EITHER THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT,**

**EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED*

*SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3d. 1415 (5th Cir. 1996).

Counsel are directed to furnish a courtesy copy of any objections or

responses to the District Judge at the time of filing.

Lafayette, Louisiana, this ___14___ day of ___June___, 2006.

C. MICHAEL HILL
MAGISTRATE JUDGE

COPY SENT
DATE 6-15-06
BY CO
TO Cmh
tLm
Pj